IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-173-BO

| | |
|---|---|
| LORI ENGLEMEN and BYRON ENGLEMEN )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JOHNSON & JOHNSON, JOHNSON & )<br>JOHNSON HEALTH CARE SYSTEMS, )<br>INC., ETHICON, INC., MIDWEST )<br>MEDICAL SUPPLY CO. and )<br>JAMIE DUMSTORFF,) )<br>)<br>Defendants. )<br>) | ORDER |

This matter is before the Court on Plaintiff's Motion to Remand (DE 20) and Defendant Midwest Medical Supply Co.'s Motion to Dismiss (DE 30). Plaintiff's Motion to Remand is GRANTED. The Court has no subject matter jurisdiction to decide the Motion to Dismiss.

I.  FACTS

This case is part of multi-district product liability litigation regarding the medical product Panacryl sutures. In the instant case, Plaintiffs are spouses Lori Englemen and Bryon Englemen. Plaintiffs allege that Mrs. Englemen was injured as a result of the use of Panacryl during her surgical procedure in February 2003. The Plaintiffs alleges the following facts:

Panacryl sutures came on the market in October 1999. Defendants Johnson & Johnson (J&J) and Ethicon, Inc. manufactured the sutures, while Defendants Johnson and Johnson Health

1

Care Systems (JJHCS) and MidWest Medical Supply sold them. Defendant MidWest Medical is thus one of two companies that could have sold the sutures to the hospital and surgeon involved in Mrs. Englemen's surgery. Pl's Compl. ¶ 25-26. The product was also marketed to hospitals and doctors by Ethicon employee Defendant Jamie Dumstorff.

Throughout 2000 and 2001, Panacryl sales increased significantly. These sales were accompanied by a high volume of complaints from 2000-2003 to the FDA stating that the sutures caused severe foreign body reactions, such as tissue splitting, substantive tissue reactions, and post-operation infection. Id. at ¶ 26-27. Defendants J&J and Ethicon abruptly stopped manufacturing the sutures in July 1, 2002, publically stating that the product had suffered from low sales and adverse surgeon product preference. Id. at ¶ 29, 33. The Plaintiffs claim that this was a fraudulent explanation designed to conceal the product's defects. Id. at ¶ 27-30. To allegedly further conceal these defects, Defendant Ethicon initiated, funded, and published a medical study in late 2002 that advocated Panacryl's safeness. Id. at ¶ 34.

Mrs. Englemen underwent surgery for suction-assisted lypectomy of the trunk and thighs with abdominoplasty in February 2003. Her surgeon, Dr, Francel, operated at St. John's Mercy Medical Center. Mrs. Englemen started having complications from her surgery starting in May 2003. These complications forced Mrs. Engelman to undergo several more procedure and operations. Id. at ¶ 35-38.

In March 2006, the FDA cited Ethicon for failing to report adverse side events and inadequately labeling the product to warn users of its negative side effects. Id. at ¶ 39. Defendants J&J, JJCHS, and Ethicon recalled the product in May 2006. Id. at ¶ 40.

2

Case 5:08-md-01959-BO   Document 161   Filed 01/05/11   Page 2 of 9

Mrs. Englemen continues to suffer severe symptoms from the initial use of the sutures. Id. at ¶ 35-38.

Plaintiffs sued Defendants in the Circuit Court of St. Louis County, Missouri on January 15, 2010 for claims including defective design, failure to warn, fraudulent concealment, violation of the Missouri Merchandising Practices Act, and loss of consortium.

Defendants filed a Notice of Removal to the United States District Court for the Eastern District of Missouri on March 16, 2010, claiming that Plaintiffs fraudulently joined Defendants Jamie Dumstorff[1] and MidWest Medical Supply for the sole purpose of defeating diversity. Plaintiffs are citizens of Missouri. Defendant MidWest Medical is also a Missouri resident. Defendants J&J, JJHCS and Ethicon are citizens of the State of New Jersey.

Plaintiffs filed a Motion to Remand on April 13, 2010. Defendant MidWest Medical Supply filed a Motion to Dismiss on September 15, 2010.

Before the Missouri district court could rule on these motions, this Court issued a Conditional Transfer Order under 28 U.S.C. § 1407 and this case was transferred to the Eastern District of North Carolina on April 28, 2010.

## II. DISCUSSION

The Court finds that MidWest Medical Supply is not fraudulently joined. Plaintiffs' suit against MidWest Medical is barred by neither Missouri's Innocent Seller Statute nor the applicable 5-year statute of limitations. In addition, Plaintiffs' counsel conduct regarding previous Panacryl cases does not show bad faith or fraud. Thus, the Court finds that Defendant MidWest Medical was properly joined.

---

[1] The citizenship of Defendant Jamie Dumstorff is contested, as the Plaintiffs claim she is a citizen of Missouri and the Defendants claim she is a citizen of North Carolina. The Courts finds the resolution of this issue is unnecessary for its conclusion.

3

The Court finds it unnecessary to resolve whether Defendant Jamie Dumstorff was fraudulently joined, as Defendant MidWest Medical's inclusion is enough to defeat diversity.

As the parties are not diverse, the Court has no subject matter jurisdiction over this case and remands it to the Circuit Court of St. Louis County, Missouri.

### A. Fraudulent Joinder

Plaintiff's properly joined MidWest Medical Supply to this suit.

When a defendant has been fraudulently joined, its citizenship is ignored for purposes of determining whether the parties are diverse. See, e.g., Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); Reeb v. Wal-Mart Stores, Inc., 902 F. Supp. 185 (E.D. Mo. 1995). To show fraudulent joinder, the removing party must demonstrate either that there is "no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court" or "outright fraud in the plaintiff's pleading of jurisdictional facts." Hartley v. CSX Transp. Inc., 187 F.3d 422, 424 (4th Cir.1999).

Here, Defendants claim that MidWest Medical Supply is fraudulently joined because 1) Missouri's "Innocent Seller Statute" bars liability against it and 2) Plaintiffs' counsel in this case has established a pattern and practice that demonstrates that he does not intend to pursue any claims against MidWest Medical Supply to judgment. In their Motion to Dismiss, Defendant MidWest Medical also asserts that liability is barred by the statue of limitations.

The Court finds that none of these arguments have merit, and Plaintiffs do in fact have a claim against MidWest Medical Supply under Missouri law. Thus, MidWest Medical Supply was properly joined.

4

### a. Missouri's Innocent Seller Statute

Missouri's "Innocent Seller Statue" does not bar Plaintiffs' claim. Mo. Rev. Stat. § 537.762.2 (1987).

The Innocent Seller Statue states that a "defendant whose liability is based <u>solely</u> on his status as a seller in the stream of commerce may be dismissed from a products liability claim." Id. (emphasis added). This defense is applicable to "any products liability claim in which another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim." Id.

In <u>Henry</u> v. <u>Mylan Pharmaceuticals, Inc.</u>, the plaintiff brought claims against both a manufacturer and seller for injuries received from prescription medication. No. 05-CV-40092-NKL, 2005 WL 2101049 (W.D. Mo. Aug. 31, 2005). The court found the Innocent Seller Statute did not apply to the seller because plaintiff had alleged claims against it "far beyond its status as a seller in the stream of commerce." Id. at *15. Specifically, the plaintiff had alleged claims against the seller for negligence, breach of express warranty, and fraudulent misrepresentation. Further, the court noted that a supplier who "knows or has reason to know that the chattel is or is likely to be dangerous for the use of another for which it is supplied" is liable for the dangerous effect of the product. Id. at *18 (citing <u>Malone</u> v. <u>Schapun, Inc.</u>, 965 S.W.2d 177, 184 (Mo.App. 1997).

Here, Plaintiffs sue Defendant MidWest Medical for the negligent supply of a dangerous instrument. Pl's Compl. 25. This claim is not based solely on MidWest Medical's status as a seller. Instead, Plaintiff claims that the Defendant directly engaged in negligent conduct. The Plaintiff alleges that Defendant MidWest Medical:

- was aware that Ethicon stopped manufacturing Panacryl sutures in July, 2002;

5

- knew that Ethicon had reported more unique foreign body reactions for this product than any of its other suture products;
- had provided Panacryl sutures to other physicians who later reported the propensity of this product to unique foreign body reactions when used in abdominal surgery;
- personally interviewed physicians at St. John's Mercy Medical Center who had experienced unique foreign body reactions and post-surgical complications following the use of the sutures;
- Directly or indirectly reported the aforesaid unique foreign body reactions and post-surgical complications to Defendant Ethicon;
- Knew that by leaving the sutures in the possession of St. John's Mercy Medical Center to be used by physicians such as Dr. Francel, after Ethicon stopped manufacturing the product, it was negligently both supplying and continuing to supply a dangerous instrumentality that could and would result in damages to persons such as Mrs. Englemen.
- Failed to warn either St. John's Mercy Medical Center or Dr. Francel.

Id. at ¶ 100-10. Under these alleged facts, Defendant MidWest Medical Supply knew or should have known the product it was supplying was dangerous to the public, and can likely be liable for its dangerous effects.

### b. Statute of Limitations

Plaintiffs' claim is not barred by Missouri's 5 year statute of limitations. Mo. Rev. Stat. § 537.762.2 (1987).

As the statute of limitations is an affirmative defense, the Defendant MidWest Medical Supply has the burden to prove Plaintiffs' claim is barred. English ex rel. Davis v. Hershewe, 312 S.W.3d 402, 408 (Mo.App. S.D., 2010).

The ultimate question is when the Plaintiffs' claim accrued. Under Missouri law, the claim accrues when the injury is "capable of ascertainment," which occurs "the moment that plaintiff's damages are substantially complete." Lockett v. Owens-Corning Fiberglas, 808 S.W.2d 902, 907 (Mo.App.E.D.1991). Where the damage is a physical ailment, it is "capable of ascertainment" when 1) it is diagnosed, and 2) a theory as to its cause is ascertainable. Id.

6

This is an objective test. In the context of defective medical products, the claim accrues not when the Plaintiff discovered that her injury was caused by a defective product, but when the "medical community" became "aware of the causation link" between the product and the injury. King v. Nashua Corp., 763 F.2d 332, 333 (8th Cir. 1985). For example, in Buttice v. G.D. Searle & Co., the court found the claim accrued when "medical texts regularly referenced the reported association" between the conditions that the plaintiff sought recovery for and the defective product, showing the medical community's awareness of the link. 938 F.Supp. 561, 565 (E.D.Mo.,1996).

Alternatively, a products liability claim can accrue when a doctor diagnoses the plaintiff's condition as being caused by the defective product. Lockett, 808 S.W.2d at 908.

Here, Plaintiffs allege the Defendants intentionally concealed the harmful effects of the sutures from the medical community. Plaintiffs claim Defendant Ethicon even fraudulently published a medical study advocating the sutures' safety in 2002 for this purpose. Because of this alleged deception, Plaintiffs state Dr. Francel was unaware of any problem with the sutures when he used them in Mrs. Englemen's surgery in February 2003.

In contrast, the Defendant MidWest Medical Supply states that Plaintiffs' claim accrued at the "date of the surgery." Def's Mo. Dismiss 6. The Defendant fails to provide factual support for this argument, however, and neglect to show that the medical community was aware of the link between the sutures and Mrs. Engelman's injuries more than five years before Plaintiffs sued.

In addition, neither the Plaintiff nor the Defendant allege that a doctor diagnosed Mrs. Englemen's complications as being caused by the sutures more than five years before the suit.

7

Thus, Defendant MidWest Medical Supply has failed to show that Plaintiffs' claim is barred by the 5 year statute of limitations.

### c. Good Faith Intention to Prosecute

The Court also rejects Defendants' argument that Plaintiffs have no good faith intention to prosecute its claim against MidWest Medical.

Defendants allege that Plaintiffs' counsel brought eleven other cases against Defendants MidWest Medical Supply, each of which was dismissed by the plaintiffs without any payment by or any judgment against MidWest Medical Supply. Defs' Notice of Removal ¶ 19; Defs' Memorandum in Opposition to Remand 9. The Plaintiffs state that these earlier cases were all settled during mediation that was requested, funded, and conducted by Defendant J&J in 2006. Following successful resolution of these claims against J&J, the plaintiffs in those cases then chose to dismiss their claims against Defendant Midwest. Memorandum in Support of Pl's Mo. Remand 5.

The Court finds these facts are insufficient to show lack of good faith intention to prosecute or "outright fraud." Hartley, 187 F.3d at 424. Accordingly, the Defendants have failed to show that Plaintiffs fraudulently joined MidWest Medical Supply to this suit to defeat diversity.

### III. CONCLUSION

The Defendants have failed to show fraudulent joinder. The Court thus lacks subject matter jurisdiction over this case because the parties are not diverse under 28 U.S.C. § 1332, as both Plaintiffs and Defendant MidWest Medical Supply are citizens of Missouri.

8

The Court thus GRANTS Plaintiffs' Motion and REMANDS this case to the Circuit Court of St. Louis County, Missouri.

SO ORDERED, this __2__ day of ~~December~~ January, 20~~10~~11.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE